41 Mass. App. Ct. 521                                      521

Mitchell v. The Stop & Shop Companies, Inc.; Continental Baking Co.

HARVEY MITCHELL & another[1] vs. THE STOP & SHOP
COMPANIES, INC.; CONTINENTAL BAKING CO., third-party
defendant.

No. 94-P-1660.

Middlesex. January 4, 1996. - October 28, 1996.

Present: ARMSTRONG, PERRETTA, & LAURENCE, JJ.

*Insurance,* Coverage, Insurer's obligation to defend. *Indemnity. Negligence,*
Retailer.

Discussion of the broad form vendor's endorsement in a liability insurance
policy. [523-524]
Where a manufacturer's delivery person was injured while delivering the
product, due to a hazardous condition on the vendor's premises, the
vendor was not entitled to indemnification from the manufacturer for
the vendor's liability to the injured person where, under the provisions
of the vendor's broad form liability coverage, the injury was not caused
by a defect in the product nor did it arise in the "distribution and sale in
the regular course of the vendor's business of [the manufacturer's]
products," nor did it fall within any exception to the liability policy
exclusions. [524-525]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 21, 1992.

Motions for summary judgment were heard by *James F.
McHugh, III,* J., and entry of final judgment was ordered by
*James D. McDaniel, Jr.,* J.

*Owen Gallagher* for Continental Baking Company.

*Mark C. McCrystal* for The Stop & Shop Companies, Inc.

ARMSTRONG, J. The plaintiff Harvey Mitchell, an employee
of Continental Baking Co. (Continental), was injured by a
Stop & Shop Companies, Inc. (Stop & Shop) truck, at or near
a Stop & Shop loading dock, as he was making a delivery of
bread products to a Stop & Shop grocery store in Everett.

---

[1]Carol Mitchell.

The Mitchells sued Stop & Shop for damages caused by its driver's negligence, and Stop & Shop, a certified insured under Continental's broad form vendor's agreement, cross claimed against Continental for Stop & Shop's costs of defense and for indemnification of its liability to the Mitchells.[2] Following settlement of the Mitchells' claims, judgment was entered for Stop & Shop against Continental pursuant to an earlier allowed motion for summary judgment. Continental appeals.

By the terms of the vendor's broad form coverage, Continental had undertaken "to defend [and] indemnify . . . [Stop & Shop, the] 'vendor,' but only with respect to the distribution or sale in the regular course of the vendor's business of Continental Baking Company's products. . . ." This coverage was subject to certain exclusions, which are set out in the margin.[3]

---

[2]Continental is a self-insurer of its product liability, but, under Stop & Shop's own liability insurance requirements for its suppliers, was required to give Stop & Shop evidence that it had insurance in place giving Stop & Shop the benefit of the broad form vendor's coverage of commercial product liability policies. Continental issued to Stop & Shop a certificate of such coverage, and Stop & Shop thus stands in the position of an additional insured under a product liability policy affording broad form vendor's coverage to the insured's (i.e., Continental's) vendors.

[3]"1. The commitment with respect to the vendor does not apply to:

   a. Any express warranty unauthorized by Continental Baking Company

   b. Personal injury or property damage arising out of

      (i) any physical or chemical change in the form of the product made intentionally by the vendor.

      (ii) repacking, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instruction from the manufacturer and then repacked in the original container.

      (iii) demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product, or

      (iv) products which after distribution or sale by Continental Baking Company have been labeled or relabeled or used as a container, part of the ingredient or any other thing or substance by or for the vendor."

The vendor's broad form coverage is an outgrowth of modern product liability law, which not only makes a manufacturer strictly liable, generally, for injuries caused by defects in its product, see *Swartz* v. *General Motors Corp.*, 375 Mass. 628, 630 (1978); *Back* v. *Wickes Corp.*, 375 Mass. 633, 639-641 (1978); *Mason* v. *General Motors Corp.*, 397 Mass. 183, 187-191 (1986) (limiting strict liability to sales and leases), but extends strict liability as well to the distributor or retailer of the manufacturer's product. See G. L. c. 106, §§ 2-314 & 2-315; *Collins* v. *Sears, Roebuck & Co.*, 31 Mass. App. Ct. 961, 961-962 (1992). The retailer or distributor who has acted merely as a conduit for the product and has not altered it or otherwise acted in a manner that contributed to the injuries may then normally sue the manufacturer of the defective product for indemnification. *Wolfe* v. *Ford Motor Co.*, 386 Mass. 95, 100-101 (1982). See also *Oates* v. *Diamond Shamrock Corp.*, 23 Mass. App. Ct. 446, 448 (1987). Because the liability trail in such cases leads back to the manufacturer of the defective product, it has generally been concluded that the purpose of the vendor's broad form endorsement is to curtail that circuitry of action by extending the insurance coverage of the manufacturer down the line to the distributor and the retailer of the product. *Dominick's Finer Foods, Inc.* v. *American Mfrs. Mut. Ins. Co.*, 163 Ill. App. 3d 149, 152 (1987). *American White Cross Labs., Inc.* v. *Continental Ins. Co.*, 202 N.J. Super. 372, 379 (1985).

So understood, the vendor's coverage as a whole has been held to relate only to injuries that arise out of the product itself. *Oliver Mach. Co.* v. *United States Fid. & Guar. Co.*, 187 Cal. App. 3d 1510, 1516-1518 (1986). *SDR Co.* v. *Federal Ins. Co.*, 196 Cal. App. 3d 1433, 1438-1439 (1987) ("the commercial purpose behind the vendor's endorsement is [to ensure] that the manufacturer's insurer will defend and indemnify the vendor for losses *caused by the manufacturer's product*" [emphasis original]). *Dominick's Finer Foods, Inc.* v. *American Mfrs. Mut. Ins. Co.*, 163 Ill. App. 3d at 152. The exclusions from coverage are interpreted as an attempt to define the boundary between those instances in which the retailer's exposure to liability arises purely from its role as a conduit, and those in which, by altering or repairing or repackaging the product, it — the retailer — may itself have caused or contributed to the injuries. See *Sears, Roebuck &*

*Co.* v. *Reliance Ins. Co.*, 654 F.2d 494, 497-498 (7th Cir. 1981), citing *Mattocks* v. *Daylin, Inc.*, 452 F. Supp. 512, 515-516 (W.D. Pa. 1978), aff'd. mem., 614 F.2d 770 (3d Cir. 1979); *SDR Co.* v. *Federal Ins. Co.*, 196 Cal. App. 3d at 1437-1439; *American White Cross Labs., Inc.* v. *Continental Ins. Co.*, 202 N.J. Super. at 380-381.

Although Mitchell was injured in the course of delivering a Continental product to Stop & Shop, his injuries cannot be said to have been caused by the product or to have arisen in "the distribution or sale in the regular course of the vendor's [i.e., Stop & Shop's] business of Continental Baking Companies' products. . . ." Rather, they arose from the distribution in the regular course of Continental's business of its products to a vendor. The factors that caused the accident were totally unrelated to defects in the products. On precisely parallel facts — injury to a manufacturer's deliveryman due to a hazardous condition at the premises of the vendor — another court has ruled that there was no coverage for the vendor under the broad form endorsement. *Dominick's Finer Foods, Inc.* v. *American Mfrs. Mut. Ins. Co., supra.*

Stop & Shop argues that it should be indemnified because Mitchell was injured in the course of "installation [or] servicing operations performed at the vendor's premises in connection with the sale of the product . . . ." The language relied on comes from the exception to part (b)(iii) of the policy exclusions (see note 3, *supra*). There is no need to consider the coverage exclusions where there is no coverage to begin with. While exclusions to coverage may sometimes be useful in determining the scope of coverage where that is ambiguous, Stop & Shop's construction of the exclusion and the exception thereto loses sight of the purpose of the vendor's broad form coverage, to extend the manufacturer's own product liability coverage to the distributors or retailers ("vendors") whose own liability arises simply from their role in passing the product on to the customer. If Stop & Shop's position were accepted, Continental would be required to cover Stop & Shop's liability to, for example, a customer who comes to Stop & Shop to buy Continental's bread and slips on a banana peel, or a Stop & Shop stockperson who injures his or her back stocking Continental products on the shelves. In none of these cases would Continental's own product liability insurance (if it were not a self-insurer) be implicated.

We agree with the position accepted by the *Dominick's* court, that "the declared and unambiguous intent of the vendor's endorsement is to provide coverage only for claims arising out of the product and that it does not cover vendors for their own negligence." 163 Ill. App. 3d at 152. It was error to rule that Continental was required to defend and indemnify Stop & Shop.

Continental and Stop & Shop reached a settlement of the Mitchells' claim, reserving their appellate rights as to the third-party claim. According to their stipulation, Continental is to recover $367,542.54 from Stop & Shop if Continental should prevail in the appeal. The judgment is reversed, and a new judgment is to be entered for Continental in accordance with the terms of the stipulation.

*So ordered.*